UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CRIMINAL CASE NO. 21-51-DLB-CJS

UNITED STATES OF AMERICA                                             PLAINTIFF

v.                          **MEMORANDUM OPINION AND ORDER**

YUN ZHENG and YAN QIU WU                                          DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \*

## I.  INTRODUCTION

This matter is before the Court on Defendants' Motion for Acquittal or in the Alternative a New Trial (Doc. # 64).  The United States has filed a Response (Doc. # 65), and the time for filing a Reply has passed without one being filed.  The Motion is thus ripe for the Court's review.  For the reasons stated herein, Defendants' Motion is **denied.**

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Yun Zheng and Yan Qiu Wu previously owned Tokyo Dragon, a Chinese restaurant in Alexandria, Kentucky.  (Doc. # 64 at 2).  Both born in China, they are legal immigrants to the United States, and they purchased Tokyo Dragon after Ms. Zheng worked there, in addition to other restaurants owned by Chinese immigrants across the country.  (*Id.* at 1).  At Tokyo Dragon, Zheng and Wu employed Hispanic men to work in the restaurant.  (*Id.* at 2).  These men lived in the basement of Zheng and Wu's house and Zheng and Wu transported them to and from work every day.  (*Id.*).  Zheng and Wu paid the Hispanic workers in cash and did not file any paperwork with the government regarding their employment.  (*Id.*).

At some point between 2016 and 2017, one of Tokyo Dragon's employees was injured at work. (*Id.*). Fidelino Francisco-Pedro burned his hand and wrist in a hot oil spill in the Tokyo Dragon kitchen, and Ms. Zheng took him to the hospital. (*Id.*). At the hospital, a nurse became suspicious of the relationship between Ms. Zheng and Mr. Francisco-Pedro, and alerted authorities. (*Id.*). The federal government began investigating Tokyo Dragon soon thereafter. (*Id.*).

On September 9, 2021, a Covington grand jury returned an indictment against Zheng and Wu, alleging four counts of harboring aliens for commercial gain in violation of 8 U.S.C. § 1324, and one count of conspiracy for the same. (Doc. # 1). The case proceeded to trial in January 2022, and after four days of trial, the jury returned guilty verdicts for both Defendants on all four harboring counts and not guilty verdicts on the conspiracy count. (Docs. # 60 and 61). Zheng and Wu are scheduled to be sentenced on May 4, 2022. (Doc. # 55).

While awaiting sentencing, Zheng and Wu have moved for acquittal under Rule 29(c), and alternately, for a new trial under Rule 33(a). (Doc. # 64). In support of their Motion, Zheng and Wu argue (1) that the jury was improperly instructed on the law of harboring and (2) that there was no evidence of concealment. (*See id.*). The United States refutes both arguments in its Response. (Doc. # 65). Because Rule 33(a) presents a more favorable burden for Defendants, the Court will begin its analysis there, and then continue to Rule 29(c).

### III. ANALYSIS

#### A. Rule 33(a) Motion for a New Trial

##### 1. *Standard of Review*

Rule 33 of the Federal Rules of Criminal Procedure allows the Court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Generally, Rule 33 motions are "disfavored, discretionary, and granted only in the extraordinary circumstance where the evidence preponderates heavily against the verdict." *United States v. Bowens*, 938 F.3d 790, 796 (6th Cir. 2019) (quoting *United States v. Mitchell*, 9 F. App'x 485, 489 n.2 (6th Cir. 2001)). A new trial is permitted "if a verdict is against the 'manifest weight' of the evidence." *United States v. Mallory*, 902 F.3d 584, 596 (6th Cir. 2018) (quoting *United States v. Hughes*, 505 F.3d 578, 592 (6th Cir. 2007)).

Rule 33 does not require the Court to view the evidence in a light most favorable to either party – thus, the evidence is viewed through a neutral lens, with the trial judge assuming "the role of a thirteenth juror, weighing evidence and making credibility determinations firsthand to ensure there is not a miscarriage of justice." *Id.* (citing *Hughes*, 505 F.3d at 592-93). While Rule 33 does not define "the interest of justice," "it is widely agreed that [the] standard allows the grant of a new trial where substantial legal error has occurred." *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010).

Zheng and Wu have argued that the jury in this case was improperly instructed, and that the Government's case lacked evidence of concealment. The Court will address both arguments in turn, evaluating them under this Rule 33(a) standard.

### *2.   Jury Instructions*

With respect to the jury instructions, Zheng and Wu posit that Jury Instruction 19(7), which instructed the jury on the definition of "harboring," was incorrect. (Doc. # 64 at 4). In full text, that instruction read:

> (7) The term "harboring" encompasses conduct that tended to substantially facilitate an alien remaining in the United States illegally and to prevent government authorities from detecting his or her unlawful presence. Such facilitation may be attempted through a wide range of conduct, including, but not limited to, providing housing and employment.

(Doc. # 56 at 22). More specifically, Zheng and Wu argue that the Court's jury instructions "incorrectly stated the law of the Circuit" under *Susnjar v. United States*, 27 F.2d 223 (6th Cir. 1928). After considering their arguments, the Court concludes that its jury instructions were correct and consistent with Sixth Circuit case law.

Zheng and Wu are correct that *Susnjar* remains good law in the Sixth Circuit. *Susnjar* is nearly 100 years old, and other circuits have revised similar holdings in the time since its writing, due to a 1954 statutory amendment and pertinent Supreme Court decisions. *See, e.g., United States v. Acosta De Evans*, 531 F.2d 248, 430 (9th Cir. 1976) (casting doubt upon *Susnjar* and explaining the evolution of how courts define "harboring"). However, the Sixth Circuit has not overruled *Susnjar*, and it nonetheless remains binding on courts within the Circuit, because "[w]hile the Sixth Circuit may well one day revisit its decision in *Susnjar*, [the District Court] cannot perform that function." *United States v. Belevin-Ramales*, 458 F. Supp. 2d. 409, 411 (E.D. Ky. 2006).

In *Susnjar*, the Sixth Circuit held "the natural meaning of the word 'harbor' to be to clandestinely shelter, succor, and protect improperly admitted aliens[.]" 27 F.2d at 224. In *Belevin-Ramales*, which remains the only Sixth Circuit case interpreting *Susnjar* in the

4

context of defining "harboring" in jury instructions, Judge Caldwell held that jury instructions should "define the term 'harbor' in a manner consistent with *Susnjar* and should not state that the 'government does not have to prove that the Defendant harbored the alien with the intent to assist the alien's attempt to evade or avoid detection by law enforcement." 458 F. Supp. 2d. at 411.  While the double negative in *Belevin-Ramales* is somewhat confusing, it is important to note that in that case, the prosecution was attempting to bypass *Susnjar* and lower its burden by including a jury instruction to disclaim *Susnjar*'s inclusion of "clandestinely sheltering" within the definition of harboring. In this case, no such attempt was made, and the Court's jury instructions accordingly did not include such a disclaimer as to the government's burden.  (*See* Doc. # 56 at 22).

Otherwise, the Court's jury instructions were consistent with *Susnjar*.  As previously stated, *Susnjar* held "the natural meaning of the word 'harbor' to be to clandestinely shelter, succor, and protect improperly admitted aliens[.]"  27 F.2d at 224. The Court's jury instructions required the jury to find that Zheng and Wu undertook "conduct that tended to substantially facilitate an alien remaining in the United States illegally and *to prevent government authorities from detecting his or her unlawful presence*." (*Id*.) (emphasis added).  In including the language emphasized in the previous sentence, the Court's jury instructions were consistent with *Susnjar*, albeit written in simpler parlance.[1]

A look at the plain meanings of the terms used in *Susnjar* makes that clear.  *Black's Law Dictionary* defines "clandestine" as "secret or concealed, especially for illegal or

---

[1] A "trial court has broad discretion in crafting jury instructions," *United States v. Rios*, 830 F.3d 403, 431 (6th Cir. 2016), and the Sixth Circuit "[does] not require a trial court to use any particular form or words." *United States v. Godofsky*, 943 F.3d 1011, 1019 (6th Cir. 2019).

5

unauthorized purposes."  *Clandestine*, *Black's Law Dictionary* (11th ed. 2019).  Here, rather than "clandestinely shelter," the Court defined "harboring" in part as "prevent[ing] government authorities from detecting" the aliens' presence in the United States.  To prevent from detection is substantially the same as to keep secret or concealed, and as such, the Court's definition of "harboring" is substantially the same as the one in *Susnjar*.[2]

In highlighting *Susnjar*'s usage of "clandestinely shelter," Zheng and Wu have posited that the jury instructions are "in direct contravention to *Susnjar*'s requirement that the government must prove the Defendants concealed the Hispanic men from government authorities." (Doc. # 64 at 4-5).  However, they have not addressed *how* the Court's instructions fall short of that requirement.  Otherwise, the Court has concluded to the contrary – after examining the plain meanings of the words used in *Susnjar*'s holding, it becomes clear that the Court's language referring to "prevent[ing] government authorities from detecting" aliens is consistent with *Susnjar*'s definition of "harboring," which includes to "clandestinely shelter."

Lastly, the Court also notes that the language included in the jury instruction was provided to the Court by Zheng and Wu.  (*See* Doc. # 40 at 5-6).  While the Court did not include a third sentence tendered by Zheng and Wu, Jury Instruction 19(7) otherwise

---

[2]  *Susnjar* defined "concealing" as "shielding from observation and preventing discovery of such alien persons."  27 F.3d at 224.  Although these cases discuss harboring within a civil RICO context and are not directly on point, at least two other courts within the Sixth Circuit have cited *Susnjar* and defined "harboring" in a manner consistent "concealing," which tracks with "clandestine" being defined as "secret or concealed."  *See, e.g. Hager v. ABX Air, Inc.*, No. 2:07-CV-317, 2008 WL 819293, at *7 (S.D. Ohio Mar. 25, 2008) (citing *Susnjar* and dismissing a case where there were "no allegations that the Defendants themselves provided housing or other shelter to the unauthorized aliens, and no allegations that the Defendants *took any steps to shield the aliens from detection*, as is required [by *Susnjar*].") (emphasis added); *Trollinger v. Tyson Foods, Inc.*, No. 4:02-CV-23, 2007 WL 1574275, at *8 (E.D. Tenn. May 29, 2007) ("The Court accepts the *Susnjar* court's definition of harboring and finds Plaintiffs' allegations comply with that definition[;]. . . the Complaint avers Tyson "*shielded illegal immigrants from detection* by . . . warning them of possible raids and providing them with housing.") (emphasis added).

almost directly tracks with their proposed instructions, except for the Court changing "with the intent to substantially facilitate" to "conduct that tended to substantially facilitate." (*Compare* Doc. # 56 at 22 *with* Doc. # 40 at 5-6).  For all these reasons, Zheng and Wu's argument with respect to the jury instructions does not rise to the level of a "substantial legal error" which necessitates the granting of a Rule 33 motion.  *Munoz*, 605 F.3d at 373.

### 3. *Evidence of Concealment*

Zheng and Wu have also argued that their Rule 33 Motion should be granted because the "government presented no evidence that the Defendants took or intended to take any action to conceal their Hispanic employees.  In fact, the government's exhibits were replete with very public facts of the Hispanic men's employment and residence." (Doc. # 64 at 5).  From there, Zheng and Wu point out that the way the men lived did not suggest any efforts of concealment by Zheng and Wu.  (*Id.*).  More specifically, Zheng and Wu mention that the men worked openly in the Tokyo Dragon, even frequently interacting with police officers, and that they were free to come and go from Zheng and Wu's residence as they pleased.  (*Id.* at 5-6).  Furthermore, Zheng and Wu argue that the men were frequently photographed by investigators outside the home, and that local police officers were aware of the men living in their home.  (*Id.* at 6).  Unfortunately for Zheng and Wu, however, these arguments do not demonstrate the verdict being against the "manifest weight" of the evidence, and as such, do not warrant granting of their Rule 33 Motion.  *Mallory*, 902 F.3d at 596.

While Zheng and Wu have highlighted evidence that is favorable to them, they are incorrect that the United States presented no evidence demonstrating concealment.  The first witness called by the United States was Jessica Kyde, RN, an employee of St.

Elizabeth Hospital. (*See* Doc. # 62). Ms. Kyde testified that when Ms. Zheng took Mr. Francisco-Pedro to the hospital after his burn injury, Ms. Zheng spoke on his behalf and behaved in an extremely suspicious manner. Later at trial, Mr. Francisco-Pedro testified that Ms. Zheng told him that he should not speak at the hospital due to his immigration status. (*See id.*). But perhaps most problematic for Zheng and Wu is the paperwork presented by the United States, as they failed to file W2s and I-9s for the Hispanic employees but had filed those documents for other employees, and they also omitted the Hispanic employees from paperwork filed with Kentucky's unemployment insurance agency. (*See id*.). Additionally, as pointed out by the United States in its response, providing housing to the Hispanic employees allowed them to avoid detection by landlords and allowed Zheng and Wu to keep an eye on them. (Doc. # 65 at 6). Zheng and Wu also required the men to enter their house through a back door in the basement. (*Id.*). With respect to credibility, Zheng and Wu have made no arguments that any of the United States' evidence is not credible, and the Court accordingly sees no reasons to infer that any evidence is not credible.

In short, even though evidence exists that is favorable to both sides, the evidence is not so heavily weighted toward Zheng and Wu that the jury's verdict goes against the "manifest weight" of the evidence. *Mallory*, 902 F.3d at 596. After weighing all the evidence in the case, the Court concludes that there has not been "a miscarriage of justice," and will thus deny Zheng and Wu's Rule 33 Motion. *Id.* (citing *Hughes*, 505 F.3d at 592-93).

8

### B.     Rule 29(c) Motion for Acquittal

Rule 29 requires the Court to "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29. The Rule asks the Court to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Rule 29 contrasts Rule 33 in that it "requires the court to view the evidence in a light most favorable to the prosecution, [while] Rule 33 does not." *Mallory*, 902 F.3d at 596. Additionally, the Rule 29 inquiry is one of sufficiency, not weight, and as such, "the court neither 'independently weighs the evidence, nor judges the credibility of witnesses who testified at trial.'" *Hughes*, 505 F.3d at 592 (quoting *United States v. Talley*, 164 F.3d 989, 996 (6th Cir. 1999)). Sufficient evidence need not be direct, as "circumstantial evidence alone is sufficient to sustain a conviction[.]" *United States v. Abner*, 35 F.3d 251, 253 (6th Cir. 1994). Lastly, in the Sixth Circuit, "a defendant claiming insufficiency of the evidence bears a very heavy burden." *United States v. Callahan*, 801 F.3d 606, 616 (6th Cir. 2015) (quoting *United States v. Jackson*, 473 F.3d 660, 669 (6th Cir. 2007)).

When a defendant makes the same arguments in support of a Rule 33 motion and a Rule 29 motion, the Court can deny both motions for the same reasons, so long as it applies the correct standards to both motions. *See Bowens*, 938 F.3d at 796. Here, because Rule 29 challenges relate to the sufficiency of the evidence, Zheng and Wu's argument with respect to the jury instructions is more properly analyzed under Rule 33. Thus, the Court's previous analysis on the jury instructions remains. With respect to Zheng and Wu's arguments on the evidence related to concealment, the Court's previous

9

analysis also carries over. In weighing the evidence, the Court also identified evidence presented by the government that supported Zheng and Wu's concealment of the Hispanic workers. *See supra* part III(A)(3). To avoid duplicity, the Court will not restate that evidence, but the existence of that evidence shows clearly that sufficient evidence exists to support the jury's verdict, especially when viewed in a light most favorable to the United States. Thus, Zheng and Wu's Rule 33 Motion will be **denied.**

IV.   **CONCLUSION**

The Court has reviewed the arguments and determined that the jury was properly instructed on the law of harboring, and that the evidence presented on concealment warrants denial of Zheng and Wu's Motions under both Rules 29 and 33. Accordingly,

**IT IS ORDERED** that:

(1)   Zheng and Wu's Motion for Judgment of Acquittal or in the Alternative for a New Trial (Doc. # 64) is **DENIED;** and

(2)   This matter remains scheduled for **sentencing** on Wednesday, May 4, 2022 at 10:30 a.m. in Covington, subject to intervening orders of the Court.

This 13th day of April, 2022.



Signed By:
David L. Bunning
United States District Judge

K:\DATA\ORDERS\Covington Criminal\2021\21-51 MOO re R. 29 Motion.docx